**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Third Degree Films, Inc., | No. 12-108-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Does 1-131, | |
| Defendants. | |

Plaintiff has filed a case against a group of Doe defendants. Pending before the Court is Plaintiff's request for expedited, early discovery to learn the identities of these Doe defendants.

**I.  Factual Background**

Plaintiff owns the copyright to an adult movie. Doc. 6-1 at 41. Plaintiff alleges that this movie was made available on a peer-to-peer file sharing network from September, 2011 to December, 2011. Doc. 6 at 4; Doc. 6-1 at 3-6. Plaintiff further alleges that 131 computers downloaded this movie through this file sharing network without paying for it, in violation of Plaintiff's copyright. *Id*. As a result, Plaintiff's amended complaint alleges that all 131 computers engaged in copyright infringement and contributory infringement. Doc. 6.

Plaintiff has identified each computer that participated in the file sharing by the computer's Internet Protocol ("IP") address. Doc. 6 at 7. Plaintiff has further alleged that based on a reverse look up of each IP address, all 131 IP addresses are physically in

1  Arizona.[1]  Doc. 6-1 at 15, 43-46.

2  Plaintiff alleges that these IP addresses are properly joined as Defendants in this case
3  under Federal Rule of Civil Procedure 20(a)(2) because:

> All Defendants ... (i) have traded exactly the same file of the copyrighted work as shown by the identical hash mark; (ii) have traded (simultaneously uploaded and downloaded) the exact same file as is the nature of torrent software; and (iii) the alleged events occurred within a limited period of time.

Doc. 6 at 3. In other words, Plaintiff claims that these Defendants all participated together in sharing this movie based on the way the file sharing network functions.

Specifically, Plaintiff alleges[2] that a person begins this sharing process by making a digital copy of the movie available on the Internet in a peer-to-peer file sharing network. Doc. 6-1 at 10. Other people on the Internet then seek out the movie. *Id*. People can seek out the movie by either searching for the title or the specific "hash" of a currently available copy of the movie.[3]  *Id*.  Once people find a copy of the movie, they use the peer-to-peer network[4] to download the movie.  *Id*.  Many people may come and go from a particular file share (they are referred to as a swarm). *Id*. Even after the person who originally made the movie available exits the file share, the new users can continue to share with later users. *Id*. The more computers who participate in the file share, the faster the subsequent downloads

---

[1] While many of the addresses are in the greater Phoenix area, at least 17 are in Tucson, which would be a different division of this district.

[2] Plaintiff makes these allegations regarding how the file sharing system works through the declaration of their contractor, Jon Nicolini.

[3] Plaintiff defines the "hash" as "SHA-1 checksum."  Doc. 6 at 14.  The Court was not aided by this definition. Dictionary.com defines checksum as: "A computed value which depends on the contents of a block of data and which is transmitted or stored along with the data in order to detect corruption of the data. The receiving system recomputes the checksum based upon the received data and compares this value with the one sent with the data. If the two values are the same, the receiver has some confidence that the data was received correctly."

[4] The parties must install a software application, such as a BitTorrent client, to use peer-to-peer file sharing.  Doc. 6-1 at 10.

- 2 -

1   because there are more sources from which to download. *Id.* A particular swarm may last
2   well over a year depending on the popularity of the movie. *Id.* at 10-11.

3   In this case, Plaintiff alleges all Defendants were part of a particular swarm, identified
4   by a particular hash, who downloaded the particular movie (or parts of it) at issue in this case.
5   *Id*. at 10. However, Plaintiff does not allege that all members of this swarm were joined in
6   this case. Instead, Plaintiff has joined only the IP addresses that were traceable to Arizona.
7   Doc. 6 at 15.

8   Because Plaintiff does not know the true owner of each of these IP addresses, Plaintiff
9   has named these 131 IP addresses as Doe Defendants. Doc. 6. Plaintiff now seeks the
10  Court's assistance in identifying the owner of each of these IP addresses. To this end,
11  Plaintiff asks the Court to issue subpoenas to each of the IP addresses' internet service
12  providers (ISP), which request the ISPs to identify the true owners of the IP addresses.

13  **II.     Analysis**

14  Many district courts around the county have been faced with similar requests in
15  similar cases. The courts have taken various approaches to these subpoena requests.[5] Some
16  courts deny the request to issue the subpoenas. *See, e.g., Pac. Century Int'l, Ltd. v. Does 1-*
17  *101*, 2011 WL 5117424, at *2 (N.D.Cal. Oct. 27, 2011); *VPR Internationale v. Does 1-1017*,
18  2011 U.S.Dist. LEXIS 64656 (C.D. Ill. April 29, 2011). Some courts sua sponte sever all but
19  the first Doe defendant, and then allow discovery to continue as to only that Defendant. *See,*
20  *e.g., SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620, at *3-4 (N.D.Cal. Nov. 30,
21  2011). Other courts deny the discovery requests as to all but the first Doe defendant on
22  improper joinder grounds, but do not sua sponte sever the other Doe Defendants. *See, e.g.,*
23  *AF Holdings, LLC v. Does 1-97*, 2011 WL 2912909 (N.D.Cal. July 20, 2011). Further, some
24  courts allow discovery on all Doe Defendants, and defer the question of whether to sever the
25  Defendants until after the identities of at least some of the Does have been discovered. *See,*

26

---

27  [5] The Court has located over 75 cases that have addressed this issue in some form.
28  This order recounts a small sample of the approaches.

- 3 -

1  *e.g., Camelot Dist. Grp. v. Does 1-1210*, 2011 WL 4455249 (E.D.Cal. Sept. 23, 2011); *Hard
2  Drive Prods., Inc. v. Does 1-188*, 2011 WL 3740473, at *3 (N.D.Cal. Aug. 23, 2011)
3  (originally the Court allowed discovery to determine the identity of all 188 Does, but, in
4  considering a later motion to quash the subpoena, the Court severed all but one Doe
5  Defendant and quashed the subpoena as to all but one Doe Defendant); *On the Cheap, LLC
6  v. Does 1-5011*, 2011 WL 4018258, at *1-2 (N.D.Cal. Sept. 6, 2011) (originally the Court
7  allowed discovery to determine the identity of all 5011 Does, but later severed all but one
8  Doe Defendant); *Boy Racer, Inc. v. Does 1-60*, 2011 WL 3652521, at *2-4 (N.D.Cal. Aug.
9  19, 2011) (quashing earlier issued subpoena and severing all but one Doe Defendant).
10 Finally, some courts initially determine that both joinder and pre-service discovery are
11 appropriate. *See, e.g., Openmind Solutions, Inc. v. Does 1-39,* 2011 WL 4715200, at *5-8
12 (N.D. Cal. Oct. 7, 2011); *New Sensations, Inc. v. Does 1-1474*, 2011 WL 4407222, at *4-7
13 (N.D. Cal. Sept. 22, 2011); *Digital Sin, Inc. v. Does 1-176*, 2012 WL 263491, at *5
14 (S.D.N.Y. Jan. 30, 2012).

15 **A.    Joinder**

16 **1.    Timing of Consideration of Joinder Issue**

17 Preliminarily, the Court must determine whether to consider the joinder question sua
18 sponte before ruling on the request for discovery or to defer that issue until a party raises it.
19 As indicated above, there are varying approaches. For example, in *Camelot Distributing
20 Group*, the Court found that considering the issue of joinder would be more appropriate after
21 further development of the record. 2011 WL 4455249, at *4. However, in *Boy Racer*, the
22 Court noted that, "courts and commentators have noted that a consequence of postponing a
23 decision on joinder in lawsuits similar to this action results in lost revenue of perhaps
24 millions of dollars [from lost filing fees] and only encourages [prospective plaintiffs] to join
25 (or misjoin) as many doe defendants as possible." 2011 WL 3652521, at *4 n. 1 (quoting
26 *Arista Records, LLC v. Doe*, 2008 WL 4823160 (N.D.Ohio Nov. 3, 2008)).

27 In deciding the severance issue at the outset, the Court in *SBO Pictures* noted that in
28 considering the pre-service discovery request, the Court must considering the viability of the

- 4 -

1 complaint. The Ninth Circuit Court of Appeals instructs:

> [W]here the identity of alleged defendants will not be known prior to the filing of a complaint[,] ... the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, *or that the complaint would be dismissed on other grounds.*

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (emphasis added).

Accordingly, in determining whether to allow the pre-service discovery sought in this case, the Court should consider whether the complaint would be dismissed on other grounds such as improper joinder. For this reason, the Court will not defer the issue of improper joinder until a Defendant raises it.

### 2. Merits of Permissive Joinder

Permissive joinder of defendants is allowed under Federal Rule of Civil Procedure 20(a)(2) when:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of related transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

If Plaintiff has not shown that the defendants satisfy the test for permissive joinder, "a court may sever the misjoined parties, 'so long as no substantial right will be prejudiced by the severance.'" *SBO Pictures,* 2011 WL 6002620, at *2 (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)).

Even when a plaintiff shows that the joined defendants meet the test for permissive joinder, the court still has discretion to sever under Federal Rules of Civil Procedure 20(b), 21 and 42(b). *On the Cheap*, 2011 WL 4018258, at *2. In determining whether joinder is appropriate, the Court must, "examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *Id*. (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)). "Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *SBO Pictures*, 2011 WL 6002620, at *3.

- 5 -

### a.     Rule 20(a)

Courts are divided over whether the swarm discussed above is either the same transaction or occurrence, or a series of related transactions or occurrences under Rule 20(a). *Compare Hard Drive Productions*, 2011 WL 3740473, at *13 *with Digital Sin*, 2012 WL 263491, at *5.

Finding that a single swarm is not the same transaction or occurrence or a series of related transactions or occurrences, one Court stated,

> Here, the Doe Defendants' alleged participation in the same swarm spanned approximately a four-month period from May 2011 to August 2011. ... The Court cannot conclude that a Doe Defendant who allegedly downloaded a portion of the Motion Picture on May 11, 2011, a Doe Defendant who allegedly did the same on August 10, 2011, and over three thousand Doe Defendants who allegedly did the same in the interim, were engaged in the single transaction or series of closely-related transactions recognized under Rule 20.

*SBO Pictures*, 2011 WL 6002620, at *3.

Similarly, another court stated,

> The court concludes here that Third Degree Films fails to demonstrate that joinder is appropriate. Third Degree Films argues that the Doe defendants are properly joined [because] the Doe defendants downloaded and shared the exact same file (i.e., were part of the same swarm) and the nature of BitTorrent technology requires concerted action with regard to each swarm. ... But, without more, permissive joinder is inappropriate, particularly given that 3,577 Doe defendants downloaded the protected work at various dates and times ranging from November 11, 2010 to June 1, 2011.

*Third Degree Films v. Does 1-3577*, 2011 WL 5374569, at *3 (N.D.Cal. Nov. 4, 2011).

Conversely, other Courts have found that as a result of being in the same swarm, the users being joined, least at the initial stage of litigation, is appropriate. For example one Court stated,

> The Court finds that Plaintiff has provided enough specificity to make a preliminary determination that the 1,474 Doe Defendants here were part of the same swarm. Reviewing Exhibit A to Plaintiff's Complaint, Defendants' alleged infringing activities occurred over a period of over nine months.... While this period might seem protracted, with respect to any particular swarm, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remains the same within that swarm. ... For each of the 1,474 Doe Defendants, Plaintiff has provided an identical hash. ... Based on these allegations, Plaintiff's claims against the Doe Defendants appear logically related. Each putative Defendant is a possible source for Plaintiff's copyrighted work, and may be responsible for distributing the work to the

other putative Defendants, who are using the same file-sharing protocol to copy the identical copyrighted material. *See Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004)... While the Doe Defendants may be able to rebut these allegations later, Plaintiff has sufficiently alleged that its claims against the defendants potentially stem from the same transaction or occurrence, and are logically related.

*New Sensations*, 2011 WL 4407222, at *6.

Another court stated,

[I]t is difficult to see how the sharing and downloading activity alleged in the Complaint – a series of individuals connecting either directly or indirectly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file – could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).  In the present case, Plaintiff has satisfied the *Digiprotec*[*t*] standard by alleging that the Doe defendants were trading the exact same file as part of the same swarm.  As a result, the Court declines to sever this case at this time.

*Digital Sin*, 2012 WL 263491, at *5; *see also MCGIP LLC v. Does 1-118*, 2011 WL 2181620 at *1 (N.D.Cal. June 2, 2011).

The New York court also discussed several policy considerations that weigh in favor of allowing permissive joinder for purposes of discovery, including that severance at this stage of the case would be a significant obstacle to plaintiff's efforts to protect its copyright and would needlessly delay the case. *Digital Sin*, 2012 WL 263491, *5 n. 6. Further, "courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts." *Id.* (citing *Call of the Wild Movie, LLC v. Does 1-1062*, 770 F.Supp.2d 332, 344 (D.D.C. 2011)).

However, none of the policy considerations raised by the New York court address the Ninth Circuit's limitation on discovery for Doe Defendants if the case might be dismissed on other grounds. *See Gillespie*, 629 F.2d at 642.  Indeed, although the New York court found a series of related transactions or occurrences, the Court specifically, "remain[ed] open ... to reconsidering this issue at a later date." *Digital Sin*, 2012 WL 263491, at *5. Similarly, the California court suggested that the Doe Defendants might rebut the determination that joinder was appropriate at a later time. *New Sensations*, 2011 WL 4407222, at *6-7. This Court has already rejected delaying the joinder determination to a later date.  Accordingly,

- 7 -

1 the Court will address permissive joinder at this time.

2 The Court finds that a user participating in the same swarm is not the same transaction 3 or occurrence or series of transactions or occurrences. The Court bases this finding on the 4 fact that a particular swarm, including the swarm at issue in this case, can last for many 5 months. During those months, the initial participants may never overlap with later 6 participants. Additionally, because pieces and copies of the protected work many be coming 7 from various sources within the swarm, individual users might never use the same sources. 8 Finally, in Plaintiff's effort to ensure this Court's jurisdiction, Plaintiff has included only 9 Arizona IP addresses from this particular swarm. However, the Court presumes many users 10 from many other jurisdictions participated in this swarm. Because of the ease with which all 11 of the various users can be separated, the Court finds it would be inconsistent to find a single 12 transaction or occurrence for joinder based solely on Plaintiff's litigation goals of bringing 13 a single lawsuit against the Arizona defendants. In other words, there is no logic to 14 segregating the Arizona based members of the swarm from the non-Arizona based members, 15 except Plaintiff's convenience. The Court finds this is not a basis for allowing permissive 16 joinder.

### b.     **Discretionary Severance**[6]

18 Alternatively, even if this Court permitted permissive joinder of the Arizona based 19 swarm members, applying the other discretionary joinder factors, this Court finds joinder in 20 this case inappropriate. As discussed above, the question of joinder of the parties is within 21 the discretion of the trial court. *On the Cheap*, 2011 WL 4018258, at *2. Factors that Court 22 should consider include whether joinder would confuse and complicate this issues rather than 23 making the management of the case more efficient. *Id*. Further, "the Court is required to 24 'examine whether permissive joinder would comport with the principles of fundamental 25 fairness or would result in prejudice to either side.'" *Id*. (quoting *Coleman*, 232 F.3d at

---

[6] Applying Rule 20(b), Rule 21, and Rule 42(b). *See Call of the Wild Movie,* 770 F.Supp.2d at 342.

- 8 -

1296).

Like the Court in *On the Cheap*, the Court finds that allowing this case to proceed against 131 Defendants creates more management problems than it promotes efficiency. Each Defendant may have different factual and legal defenses, and would then file completely unrelated motions that the Court would have to resolve within the context of one case. Simply associating the correct response and reply to each motion could take significant time before even reaching the merits of potentially unrelated defenses. Further, scheduling and conducting hearings and discovery disputes among 132 parties would be almost impossible. Additionally, during discovery, each Defendant, who might appear pro se and not be an e-filer, would be forced to serve paper copies of all filings on all other parties, and would have the right to be present at all other parties' depositions, all of which would be a significant burden on each Defendant litigant.[7] Also, because of the potential prejudice to each unrelated Defendant, the Court likely would not undertake to conduct a trial for all 131 Defendants at the same time. Thus, the Court would effectively sever these cases for trial, and conduct over a hundred separate trials with different witnesses and evidence, eviscerating any "efficiency" of joinder. Finally, all of these issues would certainly needlessly delay the ultimate resolution of any particular Defendant's case, which again weighs against efficiency and the opportunity for the Defendant to receive a prompt resolution of his or her case. As a result, having considered the fundamental fairness to the parties, and the management issues for the Court, applying this discretionary standard, the

---

[7] *See Hard Drive Productions*, 2011 WL 3740473, at *14 (summarizing similar management problems for 188 Defendants); *see also On the Cheap*, 2011 WL 4018258, at *4 ("The Court does not condone copyright infringement and encourages settlement of genuine disputes. However, plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating.")

Court alternatively finds joinder is not warranted.[8]

### 3. Severance

Once the Court concludes that joinder is not permissively or discretionarily allowed, severance of all but the first Defendant is the appropriate remedy. *Call of the Wild Movie*, 770 F.Supp.2d at 342; *see also Hard Drive Productions*, 2011 WL 3740473, at *15. Based on the foregoing, the Court will order that Doe Defendant 1 (IP address 174.17.100.230) is severed from the remaining Doe Defendants. Doe Defendants 2 through 131 will be dismissed without prejudice.

### B. Discovery request

As indicated above, and following severance, still pending before the Court is Plaintiff's request to take discovery on the ISP for Doe 1 (IP address 174.17.100.230). Courts are split on whether to allow discovery of this nature to go forward. *Compare Pac. Century Int'l*, 2011 WL 5117424, at *2 (denying discovery) *with Camelot Distrib. Grp.*, 2011 WL 4455249, at *3 (allowing discovery).

The test is,

> Pursuant to Federal Rule of Civil Procedure ("Rule") 26(d)(1), a court may authorize early discovery before the Rule 26(f) conference for the parties' convenience and in the interest of justice. Courts within the Ninth Circuit generally use a "good cause" standard to determine whether to permit such discovery. [citation omitted] "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. [citation omitted] The court must perform this evaluation in light of "the entirety of the record ... and [examine] the reasonableness of the request in light of all the surrounding

---

[8] The Court notes that some courts, applying this same fairness test, have found that fairness to the person attempting to protect their copyrighted work, at least at this initial stage, weighs in favor of discretionary joinder. *See Call of the Wild Movie*, 770 F.Supp.2d at 344-45 (finding, "If the Court were to consider severance at this juncture, plaintiffs would face significant obstacles in their efforts to protect their copyrights from illegal file-sharers and this would needlessly delay their cases. The plaintiffs would be forced to file 5,583 separate lawsuits, in which they would then move to issue separate subpoenas to ISPs for each defendant's identifying information. Plaintiffs would additionally be forced to pay the Court separate filing fees in each of these cases, which would further limit their ability to protect their legal rights."). However, the Court finds the potential prejudice to the Defendants overcomes these concerns for the Plaintiff.

- 10 -

> circumstances." [citation omitted] In determining whether there is good cause to allow expedited discovery to identify anonymous internet users named as doe defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. [citation omitted]

*New Sensations*, 2011 WL 4407222, at *1.

Applying the four prongs from *New Sensations*, courts are split as to the results. For example, the *Pacific Century* Court, in denying the discovery request, found that because the owner of the IP address in the complaint would not necessarily be the person who allegedly downloaded the movie, the discovery would encompass anyone over whose internet connection the work was downloaded. 2011 WL 5117424, at *2. The Court concluded that because this discovery would draw numerous innocent internet users into the litigation, the burden on the innocent users outweighed Plaintiff's need for discovery. *Id.* Further, the Court found that this first round of discovery might only lead to multiple additional rounds of discovery if the owner of the IP addresses was not the infringer, which the Court found cut against finding good cause for the first round of discovery. *Id.* Finally, the Court concluded that this invasive discovery could lead to abusive settlement practices. *Id.* "[N]othing prevents Plaintiff from sending a settlement demand to the individual that the ISP identifies as the IP subscriber. That individual — whether guilty of copyright infringement or not — would then have to decide whether to pay money to retain legal assistance, or pay the money demanded." *Id.* This potential for abuse is heightened given the potentially embarrassing material at issue. *VPR*, 2011 U.S. Dist. LEXIS 64656, at *5-6.[9]

---

[9] The *VPR* court also considered its jurisdiction as a basis for denying the discovery request stating, "the court note[s] that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any Does at this time; the imprimatur of this court will not be used as a fishing expedition by means of a perversion of the purpose and intent of class actions." 2011 LEXIS 64656, at *6 (internal quotations omitted). In this case, however, because all of the IP addresses are alleged to be based in

- 11 -

1 Conversely, other courts have noted that the plaintiff in these types of cases has
2 identified each IP address with specificity and linked it to a real person, exhausted other
3 discovery methods, stated a claim for copyright infringement that could withstand a motion
4 to dismiss, and shown that the requested discovery will lead to the identity of the Defendant.
5 *New Sensations*, 2011 WL 4407222, at *2-4.  Similar to *New Sensations*, in this case,
6 Plaintiff has attached an exhibit to the amended complaint with the IP address of the Doe
7 Defendant this Court has not severed. Doc. 6-1 at 43.  The Court agrees that this is sufficient
8 specificity to conclude that there is a real person or entity behind the IP address that can be
9 sued in Federal court.  Next, Plaintiff has no other means to exhaust to discover the true
10 owner and ultimate end user of the IP address.  Third, the Court finds that the amended
11 complaint, taking the allegations as true, states a claim for copyright infringement.  Finally,
12 the Court finds that this discovery will likely reveal the alleged infringer.  Accordingly, the
13 Court will issue a summons as to the one remaining Doe Defendant.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** severing Does 2-131 and dismissing them from this case without prejudice.

**IT IS FURTHER ORDERED** granting the motion for expedited discovery on Doe Defendant 1 (IP address 174.17.100.230) (Doc. 7); Plaintiff shall submit a subpoena for the ISP of Doe Defendant 1 within 10 days of the date of this Order.

DATED this 29th day of February, 2012.

_____
James A. Teilborg
United States District Judge

---

Arizona, this risk of this Court lacking personal jurisdiction is reduced. Nonetheless, there remains a risk that the true defendant will be beyond the jurisdiction of this court because the actual infringer and the owner of the IP address may not be the same person.

- 12 -